**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

Case No.: 8:26-cv-01776-MSS-LSG

JUL 7 2026 PM4:05
FILED - USDC - FLMD - TPA

**MONICA LEWIS,**
Plaintiff,

v.

**ROBERT GUALTIERI, in his Official Capacity as**

**Sheriff of Pinellas County, Florida, et, al.,**

**Defendants,**

**Prior / Related Appellate & Federal Tracking Cases:**

Sixth Circuit Judicial Court Case No.: 23-003-005-CI-19

U.S. District Court, Middle Dist. of Fl. Case No.: 8:24-cv-01935-TPB-CP

U.S. Court of Appeals for the Eleventh Circuit Case No.: 24-1355

Sixth Circuit Judicial Court Case No.: 26-002914-CI

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT FILED AS A MATTER OF COURSE PURSUANT TO FED. R. CIV. P. 15(a)(1)(B) AND JURY TRIAL DEMAND**

Plaintiff, Monica Lewis, files this First Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B) within 21 days of service of Defendants' Rule 12(b)(6) motion to dismiss, preserving her absolute right to amend once without leave of court. Plaintiff sues Robert Gualtieri, as Sheriff of Pinellas County, Florida, in his official capacity (hereinafter "Pinellas County Sheriff's Office"), and Deputy Kyle King, individually, alleging the following:

## JURISDICTION, VENUE, TIMELINESS, NOTICE AND PRECLUSION SHIELDS

1. **Federal Question Jurisdiction:** This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action is brought to redress deprivations of civil rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, under the express authority of 42 U.S.C. § 1983.

2. **Supplemental Jurisdiction:** This Court has supplemental jurisdiction over the arising state law tort claims pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal civil rights claims that they form part of the same case or controversy.

3. **Venue:** is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because all Defendants reside within this judicial district, and a substantial part of the events, omissions, and intentional evidence spoliation giving rise to these claims occurred entirely within Pinellas County, Florida.

4. **Relation Back:** Commenced in state court on May 12, 2026, within the four-year statute of limitations, these factual corrections relate back to the original filing date under Fed. R. Civ. P. 15(c)(1)(B).

5. **The Continuing Violation Doctrine:** Plaintiff invokes the Continuing Violation Doctrine to encompass the continuous, ongoing series of separate unconstitutional acts committed by the Defendant Policy Maker Sheriff Robert Gualtieri. The active, systemic administrative fraud engineered by the Defendant represents an unbroken chain of due process violations and denials of court access stretching from the initial crash up through current time. Because each subsequent administrative act of withholding material records, transmitting non-functional public records links, mailing blank data discs, and filing bad-faith tactical motions to strike discovery constitutes a renewed, independent constitutional injury, the statutory clock continuously refreshed.

6. **The Delayed Discovery Doctrine**: The active, systemic fraud engineered by the Policy Maker, Sheriff Rober Gualtieri actively suppressed critical electronic data and audio/visual tracking files, rendering these vital materials completely hidden is still an ongoing unresolved issue therefore the clock hasn't started running.

7. **Doctrine of Fraudulent Concealment:** The evidence of the unredacted dash cam footage, complete unredacted body camera footage, Event Data Recorder are being unlawfully suppressed by the Policy Maker since the first FOIA request on July 27,2023. (Exhibit E1).

8. **Conditions Precedent:** Plaintiff complied with all notice and sovereign immunity waiver conditions under Fla. Stat. § 768.28 [leg.state.fl.us

9. **Administrative Bias and Judicial Reassignment Hooks:** Plaintiff notes for the tracking record that prior summary dismissal tracks were deeply infected by administrative hostility, wherein the prior Judge Tom Barber openly declared on the record an intent to completely ignore and refuse review of the Plaintiff's future pro se filings. Because a prospective refusal to review a litigant's petitions represents a structural collapse of Due Process, and because the Defendants' ongoing fraud on the court directly compromises the integrity of the assignment network, any removal of this

track to federal channels will be met with immediate demands for mandatory judicial disqualification, recusal, and referral to the Chief Judge for track reassignment to an impartial tribunal.

10. **No Preclusion on Count I:** Deputy King was never served in the prior track, depriving that court of personal jurisdiction over him. Because individual liability was never adjudicated, and because the prior court explicitly declined to exercise supplemental jurisdiction over state-law tort claims, *res judicata* is legally impossible.

11. **No Preclusions on Count II:** Count II targets an ongoing pattern of post-judgment administrative fraud and a separate nucleus of operative facts born during and after the prior track. Because Defendants maintain an active evidence blockade and issue sanction threats on *this* live case [Exhibit J.], *res judicata* cannot apply under ***Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)**.

12. **No Preclusions on Count III:** Count III is an alternative pleading which will only be established when the Event Data Recorder and Unredacted Dash Cam video is released and **delayed discovery doctrine** is used in this instance.

## II. STATEMENTS OF FACT

**Factual Allegations Supporting Counts I (Seizure) and III (Negligence)**

13. **The Kinetic Impact:** On May 13, 2022, Defendant Deputy King, under color of state law, operated his marked cruiser to ram Plaintiff's vehicle completely off the roadway, creating severe structural crushing to Plaintiff's vehicle [Exhibit 1] and massive front-end damage to his cruiser [Ex. 1a].

14.**Telemetry Metrics:** Applying dashcam telemetry using a frame-by-frame calculation, establishes a 31-second, 1,584-foot transit launching forward to an unbraked exit velocity of 75.4 mph immediately preceding impact. Forensic tire tracks exist exclusively off-road [Exhibit. B1], with an absolute absence of braking marks on the roadway pavement. [Exhibit. B2],

15.Fundamental principles of physics and time-distance mathematics applied directly to the face of Defendant's own video footage reveal a severe operational discrepancy that exposes a pattern of aggressive driving and intentional, hostile acceleration:

a. Block 1 (6600 Block): Defendant's vehicle cleared the first 396 feet of the trip in 14 seconds, initiating movement from a complete stop and building speed to an exit velocity of approximately 38.6 miles per hour.

b. Block 2 (6700 Block): Defendant's vehicle cleared the second 396 feet in 6 seconds, utilizing its existing momentum to increase speed to approximately 51.4 miles per hour.

c. Block 3 (6800 Block): Defendant's vehicle required a prolonged 7 seconds to clear the third 396 feet, representing an anomalous drop in forward ground efficiency where the vehicle failed to maintain its acceleration trajectory.

d. Block 4 (6900 Block): Defendant's vehicle cleared the final 396 feet in a rapid, aggressive 4 seconds, requiring an instantaneous forward surge to an exit velocity of approximately 75.4 miles per hour immediately preceding the collision.

e. Plaintiff alleges that the anomalous 7-second timeline in Block 3 was a mechanical delay where forward ground progression was traded for wheel slip. This occurred because Defendant Deputy Kyle King aggressively overwhelmed the vehicle's traction limits (consistent with the loud screeching audio heard by Plaintiff just prior to impact), causing the tires to spin furiously in place before suddenly regaining grip ("hooking") at the boundary of Block 4 and launching into Plaintiff's vehicle.

16. **The Medical Trauma, Direct Notice, & Triple-Layer Cover-Up:** This high-velocity impact caused permanent structural spinal injury, verified by a July 22, 2022, MRI documenting a 3 mm right paracentral cervical disc herniation with a distinct annular tear spinning C3 through C7 [Exhibit D], and a Neurological Assessment confirming a severe crash caused directly by a police vehicle (Exhibit D2).

16(a) Crucially, the Sheriff's Office possessed actual, direct notice of the crash's severe structural impact through formal communications from Plaintiff's counsel at the time and by executing a direct financial subrogation reimbursement to Plaintiff's insurer specifically for the medical treatment chiropractic care and vehicle damages. Despite this explicit internal knowledge and financial acknowledgment of the collision's severity, the Sheriff's Office executed a continuous chain of fraudulent public records—including Florida Traffic Crash Report **No. 89361875** , an Internal Agency Incident Report , and a Risk Management Internal Report —all falsely stating there were "no injuries" on the scene. The absolute contradiction between this deliberate, triple-layer "no injury" designation, their internal property damage financial transactions, and Plaintiff's medical files serves as operational proof of a widespread, systemic custom of administrative fraud designed to distort the record, mislead the judiciary, and defeat civil rights liability.

17. **The Excited Utterance :** On an unredacted bodycam video released to the Plaintiff, Deputy King stated in the same breath while under the stress of the impact: **"She should be glad I didn't smack her," "I was driving so fucking fast," (excited utterances and an explicit administrative confession under FRE 803(2))**. He is also shown on released body cam footage , immediately fabricating a false scene narrative claiming he was avoiding a phantom vehicle.

**Factual Allegations Supporting Count II (Monell / Fraud on the Court, Fraud on the Plaintiff and Obstruction to court access)**

18. **Evidentiary Manipulation:** The Sheriff's Office responded to a July 27, 2023, public records request by transmitting a structurally manipulated, mostly silent dashcam file, deliberately stripping the native audio track to conceal the cruiser's engine roaring and tire screeching.

19. **Fraudulent Settlement Offer:** Final policymaker made and directed the specific, conscious choices to exploit a settlement offer on May 18,2024, which was deceptively made while simultaneously refusing to produce mandated public records. They have still not released the unredacted dashcam footage, further proof of a custom of fraudulent concealment.

20. The Policy maker, through his counsel issued a Strike Motion in State Court (Exhibit G) in response to a Subpoena Deuces Tectum stating that the Sheriff will

not produce the evidence connected with this incident because he is a party in the lawsuit, although that is not a lawful defense. This fraudulent concealment amounts to extrinsic fraud on the court. Plaintiff also alleges that intrinsic fraud against the Plaintiff occurred when the defendant presented the silent video, stripping the evidence to mislead both the Plaintiff, and the Court. This scheme prevented the Plaintiff' access to the courts in case U.S. District Court, Middle Dist. of Fl. Case No.: 8:24-cv-01935-TPB-CP where presiding Judge Barber, made his ruling based on an out of context silent video presented to him by the Policy Makers Counsel. On page 5 of his ruling he stated his decision to dismiss with prejudice was based on the silent video in contradiction to the **Rule of Completeness.** The Counsel for the Policy maker also used strike motions to wipe off the record, any and all the evidence entered by the Plaintiff in an attempt to overtake the narrative, while continuing to fraudulently conceal the public records to this very day. Adverse Inference should be placed on the missing video's because there is no other reason to hide than guilt, and showing consciousness of guilt. The Supreme Court held in Hazel-Atlas Glass Co. v Hartford- Empire Co. that manufacturing evidence is a "wrong against the institutions of justice" that cannot be ignored. The court's primary duty is to protect its own integrity, meaning fraud must be punished.

21. **Engineered Factual Vacuum:** As mentioned, Defendant Sheriff Robert Gualtieri removed case to federal court and filed bad-faith Motions to Strike Plaintiff's Statement of Evidence and Supplement Requests, successfully purging Plaintiff's independent evidence from the prior record. This induced the prior District Court to rely on a falsely presented silent video , explicitly noting on page 5 of the Order from Judge Barber that he was relying on a video without sound, which is a violation of the **Rule of Completeness.**

**22. Ongoing Blockade:** To lock in this fraud, Defendants moved to strike all briefs and appendices in the Eleventh Circuit [Exhibit G]. In this current track, they maintain an active evidence blockade by securing a strategic stay on discovery and a protective order, while issuing written threats of financial sanctions [Exhibit J] to pressure the Plaintiff to drop the lawsuit.

**23.**"Defendant Sheriff Robert Gualteri as the final policymaker continues to date to willfully, knowingly, and in bad faith withhold these mandated public records and unredacted audio files from the Plaintiff, demonstrating an ongoing, municipal policy and custom of systemic litigation fraud and evidence concealment that persists to the present day."

24."Because the Defendant Sheriff Robert Gualtieri is the final policymaker at the Pinellas County Sheriff Office and actively blockading these crucial public

records and audio files to this day, a blanket **adverse inference** legally commands the court to attach a presumption that the intentionally hidden files conclusively prove this systemic custom of litigation fraud and further proves that De**fendant Deputy Kyle King executed an intentional, unconstitutional seizure."**

---

**III. Count 1 CAUSE OF ACTION Fourth Amendment Unconstitutional Seizure (42 U.S.C. § 1983 against Defendant Deputy Kyle King in his Individual Capacity)**

25. Plaintiff realleges and incorporates by reference paragraphs 13-16, and 17.

26. Defendant Deputy Kyle King, acting under color of law, executed an unconstitutional seizure of Plaintiff by intentionally accelerating his patrol cruiser, violently ramming the rear of Plaintiff's vehicle and driving off the roadway leaving tire tracks off road.

27. This application of physical force terminated Plaintiff's movement through "means intentionally applied," constituting a completed Fourth Amendment seizure under *Brower v. County of Inyo*, 489 U.S. 593 (1989) and *Torres v. Madrid*, 592 U.S. 306 (2021) [Brower v. County of Inyo, 489 U.S. 593 (1989); Torres v. Madrid, 592 U.S. 306 (2021)].

28. The deputy's pretextual claim that the crash was an "accident" is explicitly disproved by physical evidence and his own recorded admissions captured on body-worn camera audio, including: *"She should be glad I didn't smack her"* and *"I was going so fucking fast."*

29. Under *Scott v. Harris*, 550 U.S. 372 (2007), the deputy's verbal "accident" excuse is legally overridden by this objective audio evidence of intentionality [Scott v. Harris | 550 U.S. 372 (2007) - ].

30. This intentional seizure was objectively unreasonable and unconstitutional under *Graham v. Connor*, 490 U.S. 386 (1989), because Plaintiff was not under lawful pursuit, was not suspected of a felony, and posed no immediate safety threat [Graham v. Connor, 490 U.S. 386 (1989)].

31. The unlawfulness of executing a high-risk vehicle ramming against a non-fleeing, non-threatening motorist was clearly established, putting Defendant on notice that his actions violated the Fourth Amendment.

**32.** As a direct result of this unconstitutional seizure, Plaintiff suffered severe physical injuries, emotional distress, and substantial property damage.

---

## IV. COUNT 2 Municipal Liability (*Monell*) — Fraud Upon the Court, Fraud Upon the Plaintiff, and Denial of Access to Courts

**(42 U.S.C. § 1983 against Defendant Sheriff Robert Gualtieri in his Official Capacity)**

33. Plaintiff realleges and incorporates by reference paragraphs 16(a), 18 through 24.

34. Defendant Sheriff Robert Gualtieri was and is operating under color of law, responsible for the policies, customs, and official legal strategies executed by its Sheriff's Department and authorized legal agents.

35. Under the Fourteenth Amendments to the United States Constitution, citizens possess a right to procedural due process, and a right of meaningful, unobstructed access to the courts.

36. Under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), municipal liability attaches directly when a final policymaker authorizes the unlawful concealment of public records, authorizes a settlement offer while concealing public records to mislead the Plaintiff and the Court. Authorizing strike motions in court to suppress evidence and silence the Plaintiff. And all schemes calculated to deliberately prevent the plaintiff from having a fair opportunity to present her case in court.

37. These calculated actions by final policymaker Sheriff Robert Gualtieri, include using strike motions to silence the Plaintiff while simultaneously presenting a

spoliated, silent video track completely out of context to Judge Barber, to trick the court into believing a violent ramming was a mere accident by means of **Intrinsic Fraud**. By also, concealing the unredacted dash cam video, and the Event Data Recorder the Defendant Sheriff Robert Gualtier actively prevented the Plaintiff from presenting her prior case # U.S. District Court, Middle Dist. of Fl. Case No.: 8:24-cv-01935-TPB-CP by means of **Extrinsic Fraud**. The silent video violates the **Rule of Completeness,** thereby the Defendant operated systemic fraudulent customs and policies to perpetrate a fraud upon the court and a fraud upon the plaintiff.

38. Defendant Sheriff Robert Gualtieri further executes this unconstitutional blockade and denial of access to courts through a continuous policy and custom of systemic non-compliance with statutory mandates, discovery rules, and judicial mechanisms. This ongoing non-compliance includes the Defendant Policy Makers intentional, bad-faith refusal to comply with valid Freedom of Information Act (FOIA) public records requests, its willful defiance of a valid Subpoena Duces Tecum, and its disobedience of a Motion to Compel Discovery.

39. Defendant Policy Maker, Sheriff Robert Gualtieri through continues to date to willfully, knowingly, and in bad faith withhold these mandated public records and unredacted audio files from the Plaintiff against Florida Statute 119 . This

demonstrates an ongoing, unchecked municipal policy and custom of systemic litigation fraud and evidence concealment that persists to the present day.

40. Under the governing principles of the *Hazel-Atlas* doctrine (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)), a dismissal or defense engineered by suppressing data, hiding a confession, ignoring judicial discovery mechanisms, and purging the docket lacks any lawful authority and violates the basic tenets of due process.

41. Because the Defendant Robert Gualtieri is the final policymaker and actively concealing these crucial public records, to this day, a blanket adverse inference legally commands the court to attach a presumption that the intentionally hidden files conclusively proves that Defendant Deputy executed an intentional, unconstitutional seizure followed by this systemic custom of litigation fraud, preventing the Plaintiffs access to the courts.

42. This bad-faith manipulation of the judicial process, authorized and ratified by final municipal policymaker, was executed with the sole, deliberate intent to insulate the municipality from federal liability and deny the Plaintiff a full, fair, and meaningful opportunity to litigate her claims.

43. As a direct and proximate result of Defendant Sheriff Robert Gualtieri's unconstitutional custom of post-incident litigation fraud, continuous discovery

non-compliance, current ongoing evidentiary blockades, and systemic denial of due process, Plaintiff has been obstructed from seeking judicial redress and has suffered profound financial and emotional damages.

---

V. **COUNT 3 – VICARIOUS LIABILITY(Alternative Pleading) (Defendant, Sheriff Robert Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida), is sued herein, and it is alleged:**

44. Plaintiff realleges and incorporates by reference paragraphs 13-16, and 17.

45. This is an action for damages that exceed $200,000.00 exclusive of interest, costs, and attorney's fees.

46. At all times material hereto, Defendant Sheriff Robert Gualtieri, was the duly elected or appointed constitutional officer heading the Pinellas County Sheriff's Office.

47. At all times material hereto, Deputy Kyle King (hereinafter "the Deputy") was employed by the Defendant Sheriff Robert Gualtieri as a law enforcement deputy.

48. Alternatively Plead, if the Deputy is found to have been acting within the scope of his employment (EDR or unredacted dash cam evidence are being withheld)

or by jury trial then Sheriff Robert Gualtieri in his Official Capacity will be vicariously liable for damages.

49. On or about May 13, 2022, Deputy Kyle King owed a legal duty of care to ensure their actions did not create a foreseeable zone of risk and operate their law enforcement vehicle in a safe manner.

50. The Deputy breached this duty of care by ramming into the rear of the Plaintiff's vehicle, while driving reckless and driving off the road after the collision.

51. Pursuant to the doctrine of *respondeat superior* and Florida Statute § 768.28, Defendant Sheriff is vicariously liable for the negligent acts and omissions of his employees committed within the course and scope of their employment.

52. As a direct and proximate result of the Deputy's breach of duty, severe bodily injuries, pain and suffering, disability, disfigurement, mental anguish, medical treatment, and loss of earnings were sustained.

53. These losses are permanent or continuing in nature and will cause suffering in the future.

54. All conditions precedent to filing this action have been complied with, including providing written pre-suit notice as required by Florida Statute § 768.28.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

- A. As to Count I, **(4th Amendment Unconstitutional Seizure)** compensatory damages against Defendant Deputy Kyle King in his individual capacity for severe bodily injury, permanent spinal trauma, future medical expenses, and emotional distress as permitted by law, in the amount of three million dollars. ($3,000,000.00);

- B. As to Count II **(*Monell* Municipal Liability 14th Amendment, Obstructing Plaintiff's Access to the Court by fraudulent tactics),** compensatory damages against Defendant Sheriff Bob Gualtieri in his official capacity for the systematic fraud, evidentiary concealment, and unconstitutional obstruction of Plaintiff's right of access to the courts, in the amount of three million dollars ($3,000,000.00);

- C. **As to Count III, (Alternative Pleading)** compensatory damages against Defendant Robert Gualtieri in his Official Capacity up to the maximum allowable statutory limit pursuant to Florida Statute § 768.28;
- D. Punitive damages against Defendant Deputy Kyle King in his individual capacity for his willful, wanton, and reckless disregard of Plaintiff's constitutional rights as established by his excited utterances on the scene.
- E. An order compelling the immediate, unredacted production of all withheld dashcam footage, body-worn camera video, audio recordings, Event Data Recorder and internal incident reports related to this occurrence;
- F. Litigation costs pursuant to 42 U.S.C. § 1988; and
- G. Such other, further, or different relief as this Court deems just, proper, and equitable.

---

I HEREBY CERTIFY that on July 7, 2026, a true and correct copy of the foregoing was served via electronic mail directly upon Counsel for the Defendants, Anne McDonough, at her designated email address: amcdonough@pcsonet.com.

Monica Lewis, Pro Se
275 Kingfish Dr Se
St Petersburg, Florida 33705
Ph: (727)458-9458
Email: horizonnear@gmail.com
Monica Lewis

## PLAINTIFF'S INDEX OF EXHIBITS TO THE COMPLAINT

Plaintiff hereby gives notice of filing the following evidentiary exhibits, which are attached hereto and expressly incorporated by reference into the Initial Complaint pursuant to Federal Rule of Civil Procedure 10(c).

| Exhibit ID | Document Description | Source / Author | Original Date |
|---|---|---|---|
| Exhibit A1 | Photograph / Documentation of Structural Damage to Police Interceptor Vehicle (Item 1) | PCSO Forensic Team | May 13, 2022 |
| Exhibit A2 | Photograph / Documentation of Structural Damage to Police Interceptor Vehicle (Item 2) | PCSO Forensic Team | May 13, 2022 |
| Exhibit B1 | Photograph / Physical Evidence of Off-Road Tire Tracks (Item 1) | PCSO Forensic Team | May 13, 2022 |
| Exhibit B2 | Photograph / Physical Evidence of Off-Road Tire Tracks (Item 2) | PCSO Forensic Team | May 13, 2022 |
| Exhibit C | Photograph / Documentation of Property Damage to Plaintiff's Vehicle | PCSO Forensic Team | May 13, 2022 |
| Exhibit D1 | Medical Records: Diagnostic Magnetic Resonance Imaging (MRI) Report | St. Pete MRI | May 22, 2022 |
| Exhibit D2 | Medical Records: Neurologist Evaluation and Clinical Medical Report | Dr. Jeffrey Walker | August 2, 2022 |

| Exhibit | Description | Source / Party | Date |
|---|---|---|---|
| Exhibit E | Freedom of Information Act (FOIA) / Public Records Receipt | Public Records Custodian | 2023 |
| Exhibit F | Notice of Settlement Offer / Written Settlement Documentation | Pinellas County Sheriff's Office | May 18, 2024 |
| Exhibit G | Court Pleading: Motion to Strike | Defendant | October 30, 2024 |
| Exhibit H | Court Pleading: Motion to Strike All Briefs, Strike the Supplement of the Incomplete Transfer of the Court File, and Strike All Appendices | Defendant | March 7, 2025 |
| Exhibit I | Email Correspondence: Denial of Release of Public Records | Speaker for the Decision Maker | June 19, 2026 |
| Exhibit J | Email Correspondence: Threat of Sanctions or Demand to Dismiss Lawsuit | Speaker for the Decision Maker | June 25, 2026 |

---

Exhibit A 1- Photo of Structural Damage to Sheriff Intercept Vehicle (Angle 1)

Exhibit A(1)



A 2- Photo of Structural Damage to Sheriff Intercept Vehicle (Angle 2)

EXHIBIT
A2



# Exhibit B: Physical Evidence of Off-Road Tire Tracks (Item 1)

Exhibit B (1)

EXHIBIT B



Exhibit B (2): Physical Evidence of Off-Road Tire Tracks (Item 2)

Exhibit B (2)



# Exhibit C: Documentation of Property Damage to Plaintiff's Vehicle

Exhibit C



# Exhibit D (1): Magnetic Resonance Imaging (MRI) Report

Saint Pete MRI

Patient Name: LEWIS, MONICA
Patient Number: SP163825
Date of Birth: [redacted]
Exam Description: MRI C SPINE WO
Date of Service: 22-Jul-2022 2:41 PM
Referring Physician: Mosher, Peter Dc
Reading Radiologist: Helfner, Brett

---

MRI C SPINE WO

HISTORY: Neck pain status post MVA on 5/13/2022

TECHNIQUE: MR imaging of the cervical spine was performed without IV contrast.

COMPARISON: None

FINDINGS:

ALIGNMENT: There is no scoliosis. There is slight reversal of usual cervical lordosis.

BONES: Vertebral body heights are maintained. Marrow signal is within normal limits.

LIGAMENTS: Intact.

CORD: The cervical cord is normal in signal and morphology.

DISCS: See details below.

C1-C2: Unremarkable.

C2-C3: There is no disc bulge, herniation or stenosis.

C3-C4: There is a 3 mm right paracentral disc herniation with annular tear extending slightly above and below the disc space (sagittal 7, axial 6). Findings result in mild central stenosis. There is no foraminal stenosis.

C4-C5: There is a 1 mm central disc herniation protruding just beyond the posterior vertebral margin (axial 9). There is no central or foraminal stenosis.

C5-C6: There is a disc bulge without central or foraminal stenosis.

C6-C7: There is a disc bulge without central or foraminal stenosis.

C7-T1: There is no disc bulge, herniation or stenosis.

The surrounding soft tissues in the neck are unremarkable.

The visualized posterior fossa is unremarkable.

IMPRESSION:

C3-C4: There is a 3 mm right paracentral disc herniation with annular tear extending slightly above and below the disc space (sagittal 7, axial 6). Findings result in mild central stenosis. There is no foraminal stenosis.

---

Saint Pete MRI

| | |
|---|---|
| Patient Name: | LEWIS, MONICA |
| Patient Number: | SP163825 |
| Date of Birth: | 28-Nov-1974 |
| Exam Description: | MRI C SPINE WO |
| Date of Service: | 22-Jul-2022 2:41 PM |
| Referring Physician: | Mosher, Peter Dc |
| Reading Radiologist: | Helfner, Brett |

C4-C5: There is a 1 mm central disc herniation protruding just beyond the posterior vertebral margin (axial 9). There is no central or foraminal stenosis.

Disc bulges without stenosis at C5-C6 and C6-C7. Reversal of the usual cervical lordosis.

Based on the morphology of the disc herniations and lack of underlying degenerative changes, within a reasonable degree of medical certainty, the disc herniations discussed above appear traumatic in etiology, and likely associated with the date of injury. However, clinical correlation is recommended.

Electronically signed by:
Brett Helfner, MD
7/24/2022 11:05 AM EDT

Electronically Signed: Date: 24-Jul-2022 11:05 AM

Brett Helf

Brett Helfner
STAR TELERADIOLOGY
Fellowship Trained Musculoskeletal Imaging/MRI





# Exhibit D (2): Neurologist Evaluation and Clinical Medical Report

**Jeffrey Walker, MD, PA**
**6830 Central Ave**
**Suite B**
**St. Petersburg, FL 33707**
**Office: 727-623-4311**
**Fax: 727-623-0052**

---

**INITIAL NEUROSURGICAL CONSULTATION**

**PATIENT:** Monica Lewis
**D.O.V.:** 08/02/2022
**D.O.A.:** 05/13/2022

**HISTORY OF PRESENT ILLNESS:** The patient is a 47-year-old, right-handed lady who presents with the chief complaint of mid and lower cervical neck pain radiating to the interscapular area and low back pain with intermittent numbness and tingling in all the fingers of the left hand, as well as intermittent numbness and tingling in the left foot ever since a motor vehicle accident on May 13, 2022. She was a belted driver who was hit from behind while stopped in traffic by a police officer! She denies loss of consciousness. Her neck pain is a constant sharp pain with a lot of stiffness and tightness in the neck aggravated by prolonged standing, sitting, lateral head rotation, head flexion, and head extension. It is helped with bedrest, ice, heat, chiropractic treatment, and stretching. She was given a muscle relaxant, but did not take this medication. She does get the intermittent numbness and tingling in all the fingers of the left hand, but the numbness is not present today. She denies any pain or weakness in the arms. Her back pain is a constant interscapular and right thoracolumbar pain described as a constant pressure-to-sharp pain aggravated by standing, sitting, bending, and lifting. It is helped with bedrest, ice, heat, chiropractic treatment, and stretching. Her back pain does radiate towards the left hip and she gets the numbness and tingling in the left foot, which is not present today. She is still going to the chiropractor and stretching, but she has not tried any medications. She had a previous motor vehicle accident in 2021, but no injuries. She has never received any treatments or had any problems with her back or neck predating this accident. She does feel that her gait is stiffer, but she has no bowel or bladder incontinence.

**PLEASE REFER TO THE PATIENT'S INFORMATION SHEET AND HISTORY, WHICH I HAVE REVIEWED.**

**PHYSICAL EXAMINATION:** The patient is 5'7" and weighs 150 pounds with a blood pressure of 95/58, pulse of 71, and temperature of 97.5. She is a pleasant, slender lady in no apparent distress. She is awake, alert, and follows all commands well, normal speech. Cranial nerves are grossly intact. Motor exam: She is 5/5 in all motor groups, normal tone. No ankle clonus, no drift. She can heel and toe walk. Sensory exam: Intact to pinprick and proprioceptive testing. Romberg is negative. Cerebellar exam: No tremor, nystagmus, dysmetria on finger-to-nose, normal gait. She can tandem walk. Reflexes are 1-2+ and symmetrical. Toes are downgoing, negative straight leg raising, negative

**PHYSICAL EXAMINATION, cont.:**
popliteal compression test, and negative Patrick's test. There is 1+ paravertebral muscle spasm in the cervical musculature with some limited range of motion of the neck on extremes. There is limited range of motion of the back on flexion. There is point tenderness over the thoracolumbar area off to the right side over the facets with 2+ paravertebral muscle spasm and tenderness. There is limited range of motion of the back on flexion due to pain.

**IMAGING STUDIES:** The patient came with a cervical MRI scan dated July 22, 2022, which shows a 3 mm right paracentral extruded, but contained disc herniation with annular tears that does approach the spinal cord; however, there is no frank spinal cord compression. There is no foraminal stenosis. There is some central stenosis. The radiologist opined there was a "C4-C5 1 mm central disc herniation protruding just beyond the posterior vertebral margin. There is no central or foraminal stenosis." I would not classify this as herniated. This is a bulging disc by definition. There is reversal of the normal cervical lordosis consistent with a severe musculoligamentous injury/strain/sprain. The lumbar MRI scan shows very little degenerative disc disease and no disc pathology. According to the radiologist, there is a "large cystic structure in the pelvis with abdominal and pelvic ascites, a cystic ovarian neoplasm cannot be excluded. Further evaluation with dedicated pre- and post-contrast pelvic MRI is recommended." To me, the ovarian mass is in the midline, which looks like a full bladder to me; however, I did review the MRI scan with the patient and stressed the immediately need for a gynecology visit. Her last visit was 2 years ago and everything was fine at that time. Hopefully, this is an enlarged bladder and not a terrible cancer. I did review the cervical MRI scan with the patient so she is aware of the nature, severity, and permanency of her injury.

**ASSESSMENT:** The patient has posttraumatic C3-C4 disc herniation with annular tear, cervical, thoracic, and lumbar strains/sprains, and right thoracolumbar facet syndrome causally related to the motor vehicle accident of May 13, 2022. She has no numbness today. She has a normal neurological exam except for the muscle spasm and tenderness.

**PLAN:** It is my recommendation for the addition of medications to her chiropractic treatment. I recommended Motrin 600 mg 3 times a day with meals or Aleve 400 mg twice a day with meals. The patient is to discontinue or change these medications if they bother the stomach. I also prescribed Flexeril 10 mg 2-3 times a day as a muscle relaxant. I cautioned the patient on the side effects of sedation. She cannot drive, work, or operate equipment while taking this medication; however, she should take it at least twice a day – once when she gets home from work or therapy and again at bedtime, otherwise 3 times a day. If this fails to help her pain complex, the next step would be right thoracolumbar facet blocks, which are diagnostic and therapeutic for her condition, and/or a cervical

**PLAN, cont.:**
epidural steroid injection. I reviewed the nature of the procedure, the alternatives, and the risks with her. All questions were answered. No promises or guarantees of pain relief or duration of pain relief were given. Every procedure has a risk of bleeding, infection, anesthetic, and medical problems. If she did wish to have the procedure, she would have to stop all anti-inflammatories except for Tylenol 1 week prior to the injection as these can cause bleeding and bleeding in the spinal canal can cause unforeseen neurological deficits or paralysis. A small chance of dural puncture causing headaches requiring bed rest or a blood patch, and reaction or allergy to the steroid medication, contrast dye, or anesthetic are possible. This is a permanent injury to the cervical spine. As it does cause stenosis and contacts the spinal cord, I recommend permanent restrictions of no climbing ladders, riding horses or roller coasters, or doing other activities where she could fall or injure her neck. She seemed to have a good understanding. She will continue her chiropractic treatment with the medications and contact our office if she does wish to proceed with injections. The need for the continued chiropractic treatment, medications, and possible injections is a direct consequence of the May 13, 2022 motor vehicle accident. A C3-C4 disc arthroplasty would be indicated if she fails all conservative treatment, including the injections or develops any neurological changes, particularly signs of myelopathy.

**Respectfully Submitted,**

**Stamped in his absence to avoid delay**
**Jeffrey Walker, M.D., FACS**
**Board Certified Neurosurgeon**

DD: 08/02/2022
DT: 08/02/2022

**Jeffrey Walker, MD, PA**
**6830 Central Ave**
**Suite B**
**St. Petersburg, FL 33707**
**Office: 727-623-4311**
**Fax: 727-623-0052**

**Recommended Procedure Cost Estimate**

**PATIENT:** Monica Lewis
**D.O.V.:** 08/02/2022
**D.O.A.:** 05/13/2022

Procedure(s):

1. Right thoracolumbar facet blocks. The approximate global cost of a single-level unilateral facet block would be $2,000. Each additional level per side would be an additional $2,000.
2. Cervical epidural steroid injection. The approximate global cost of a series of epidural steroid injections would be $4,000 each.
3. C3-C4 disc arthroplasty. The approximate cost of a single-level ACDF surgery would be $38,000. This fee is for SURGICAL COSTS ONLY.

**Jeffrey Walker, MD, PA**
**6830 Central Ave**
**St. Petersburg, FL 33707**
**Office: 727-623-4311**
**Fax: 727-623-0052**

97.5°

Date: 2/22
Name: MONICA LEWIS
HT: 5'7" WT: 150
BP: 95/58 P: 71
Referred By: MOSHER

Age: 47 Hand Dominance: Right / Left Male/Female

Allergies: ASPIRIN

Date of Injury: 5/13/22 Occupation: SELF EMPLOYED

MVA / S&F / Other Seat Belted: Y / N Front / Back Seat / Driver LOC: Y / N

How: Rear Ended Driver's side Passenger Side Front End T-boned Toward Front Toward Back

STOPPED FOR TRAFFIC THAT HAD STOPPED FOR A BUS UNLOADING AHEAD OF THEM & SHE WAS REAR ENDED BY A POLICE OFFICER

Chief Complaint(s): (1) MIDDLE Cervical Pain (2) MIDDLE Thoracic Pain (3) MIDDLE Lumbar Pain L Arm Shoulder Pain W/N/T ALL FINGERS (L) HAND L Leg Hip Pain W/N/T (L) FOOT
Headaches

**Neck Pain**: Constant / Intermittent Bilateral Left Right Location: MIDDLE

Dull / Burning / Achy / Sharp / Shooting / Stabbing / Toothache / Pressure / Throbbing / Stiff / Tightness "CLICKING"

AGG: Standing / Sitting / Turning Head / Lifting / Walking / Twisting / Laying Down / Raising Arms / Looking Up or Down / Everything

ALL: Bedrest / Sitting / Ice / Heat / RX CHIRO, STRETCHING, WAS GIVEN MUSCLE RELAXANT BUT DIDN'T TAKE IT

Any Arm: Pain/Weakness/ Numbness/ Tingling Where: Hand / Fingers/ Elbow/ Shoulder L + N/T ALL FINGERS & (L) HAND

**Back Pain**: Constant / Intermittent Location: MIDDLE THORACIC & LOW BACK

Dull / Burning / Achy / Sharp / Shooting / Stabbing / Toothache / Pressure / Throbbing

AGG: Standing / Sitting / Bending / Lifting / Walking / Twisting/ Laying Down/ Everything

ALL: Bedrest / Sitting / Ice / Heat / RX CHIRO, STRETCHING

Any Leg: Pain / Weakness / Numbness / Tingling Where: Foot / Toes/ Knee (L) HIP & LEG W/N/T (L) FOOT

Treatment: Chiro / PT / Manual Therapies/ Other CHIRO, STRETCHING

Meds: NONE

Injections: 0 Surgery: 0

Previous Injury: Y/N When: 2021 Receive Treatment: Y / N

Result: NO INJURY

Gait Dist: Y / N STIFF B / B Incontinence: Y/N

Dictation # 28781820

Jeffrey Walker, MD, PA
6830 Central Avenue
Suite B
St. Petersburg, FL 33707
Office: 727-623-4311
Fax: 727-623-0052

TO CALL FOR APPOINTMENT

## Procedure Recommendation Sheet

Patient Name MONICA LEWIS Date 8/2/22

Dr. Walker has recommended an injection to help with your neck or back pain.

The recommended procedure (R) THORACO-LUMBAR FACET; CERVICAL ESI

to be done be done at our office located at

6830 Central Ave
Suite B
St. Petersburg, FL 33707
Phone: 727-623-4311

We advise you to notify your attorney if you are interested in this procedure.

**PLEASE REMEMBER TO STOP ALL OF THE FOLLOWING MEDICATIONS, 7 DAYS PRIOR TO THE PROCEDURE** or any medications that contain – ASPIRIN, MOTRIN, ADVIL, IBUPROFEN, MOBIC, ALEVE, NAPROXEN, DICLOFENAC, MOBIC, MELOXICAM AS WELL AS ANY HERBAL SUPPLEMENTS INCLUDING FISH OIL, CO Q 10, VITAMIN E, BC POWDER or GOODY POWDER.

*****YOU MAY CONTINUE TO USE TYLENOL OR MUSCLE RELAXANTS, IF PRESCRIBED.*****

**PLEASE REMEMBER TO TAKE YOUR BLOOD PRESSURE MEDICATION IN THE MORNING AND BRING AN EXTRA PILL TO THE PROCEDURE.**

**PLEASE NOTIFY DR. WALKER IF YOU'RE TAKING ANY ANTI-COAGULATION MEDICATION FOR BLOOD CLOTS OR CARDIAC PROBLEMS-- FOR EXAMPLE-- COUMADIN, WARFARIN, PRADAXA, PLAVIX, ELIQUIS, ANY INJECTABLE MEDICATIONS OR ANY MEDICATIONS THAT COMPROMISE YOUR IMMUNE SYSTEM, FOR EXAMPLE HUMIRA, ANTIBIOTICS.**

Please contact out office with any other questions or concerns! Phone # 727-623-4311

Exhibit E (1): The very first attempt to request FOIA documents

# P109001-072723 - Public Records Request

## Message History (4)

On 9/1/2023 4:23:04 PM, PCSO Support wrote:

**Subject:** [Records Center] Public Records Request :: P109001-072723
**Body:**

PINELLAS COUNTY SHERIFF'S OFFICE

09/01/2023
RE: PUBLIC RECORDS REQUEST of July 27, 2023, Reference # P109001-072723

Dear Monica Lewis,

The Pinellas County Sheriff's Office received a public records request from you on July 27, 2023. Your request mentioned:

This is a FOIA request * I would like this information sent to me

1) All the Officers names and badge numbers who were on the scene.

2) Body Cam & Dash Cam footage from all Officers

3) All 911 Call recordings related to the incident - **These must be requested from Pinellas County Regional 911**

4) Dispatch and Radio Recordings - **No Records Responsive**

5) Written Reports related to the incident

In accordance with Florida Public Records Law, Chapter 119 of the Florida State Statutes, the Pinellas County Sheriff's Office has produced your records with the following information having been excised, withheld or exempt:

F.S.S 119.0712(2) **DHSMV Records**
F.S.S 316.066(2) **Accident/Crash Reports**
F.S.S 943.0525 **Criminal Justice Information Systems**

**NOTE: Please disable pop-up blockers before downloading records. You will be allowed to download each file two times; please save each record once it has been downloaded.**

Sincerely,

Dawn Lyons
Public Records Specialist
Public Records Processing Unit

On 7/31/2023 5:06:37 PM, PCSO Support wrote:

**Subject:** [Records Center] Public Records Request :: P109001-072723
**Body:**

PINELLAS COUNTY SHERIFF'S OFFICE

07/31/2023

RE: PUBLIC RECORDS REQUEST of July 27, 2023, Reference # P109001-072723.

Dear Monica Lewis,

The Pinellas County Sheriff's Office received a public records request from you on July 27, 2023. Your request mentioned:

"This is a FOIA request * I would like this information sent to me

1) All the Officers names and badge numbers who were on the scene.

2) Body Cam & Dash Cam footage from all Officers

3) All 911 Call recordings related to the incident

4) Dispatch and Radio Recordings

5) Written Reports related to the incident"

In response to your request, the Pinellas County Sheriff's Office completed a search of our records and there are potential items responsive to your public records request. Your request has taken in excess of fifteen minutes, as such, the cost for these records is as follows:

Fees Charged:

Labor: $37.77 (1.32 hours @$28.61/hour)

**Total: $37.77**

Payments must be made within 60 days or your request will be considered withdrawn. The following are acceptable forms of payment; cash – exact amount (change cannot be provided), money order or a check made out to the Pinellas County Sheriff's Office. Please send a check made out to the Pinellas County Sheriff's Office, with "PRR No. P109001-072723" written in the memo section and mail to:

Pinellas County Sheriff's Office PRPU

P. O. Drawer 2500

Largo, FL 33779-2500

Your public records request will be processed upon receipt of your payment. Should the processing of the request exceed the estimated time, you will be invoiced for the difference. In the event the request takes less time than originally estimated, we will refund the difference.

Sincerely,

Dawn Lyons

Public Records Specialist

Public Records Processing Unit

On 7/27/2023 2:22:45 PM, PCSO Support wrote:

Dear Monica Lewis:

Thank you for your interest in public records of the Pinellas County Sheriff's Office. This is an automated reply confirming receipt of your request submitted on 7/27/2023. Your request has been provided with reference number P109001-072723 for tracking purposes. In accordance with Florida Public Records Law, Chapter 119 of the Florida State Statutes, we are in the process of researching your request and will notify you when it is available for release.

Records Requested: This is a FOIA request * I would like this information sent to me

1) All the Officers names and badge numbers who were on the scene.

2) Body Cam & Dash Cam footage from all Officers

3) All 911 Call recordings related to the incident

4) Dispatch and Radio Recordings

5) Written Reports related to the incident

Your request will be forwarded to the relevant county department(s) to locate the information you seek and to determine the volume and any costs associated with satisfying your request. You will be contacted about the availability and/or provided with copies of the records in question.

PLEASE NOTE: The Florida Freedom of Public Information Act (Florida Sunshine Law) does not require a governmental body to create new information, to do legal research, or to answer questions.

Please do not reply to this correspondence You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed. Again, thank you for using the Public Records Center.

Pinellas County Sheriff's Office

---

To monitor the progress or update this request please log into the Public Records Center.

On 7/27/2023 2:22:44 PM, Monica Lewis wrote:

Request Created on Public Portal

Exhibit E (2): Still Following Up On Non Receipt of FOIA Documents

Exhibit E (2)

Gmail

Monica Lewis <justiceisnecessary@gmail.com>

**Fwd: [Records Center] Public Records Request :: P132694-081524**

1 message

**NEWDAY123100** <horizonnear@gmail.com>
To: justiceisnecessary@gmail.com

Thu, Oct 3, 2024 at 10:48 PM

---------- Forwarded message ---------
From: **NEWDAY123100** <horizonnear@gmail.com>
Date: Thu, Oct 3, 2024 at 10:48 PM
Subject: Re: [Records Center] Public Records Request :: P132694-081524
To: PCSO Support <pcso@govqa.us>

Thank you Mr Wilson,

I will mail the money requested for the CD to be made. I would like all the videos associated with this incident on CD/DVD. Unredacted.
Also can you please reload the video you uploaded to my request center on 9/5/24 listed as Deputy_King_in -car-mp4 and please allow at least 3 downloads.

Thank you for your assistance in this matter,

Monica Lewis
727-458-9458

On Mon, Sep 23, 2024 at 10:52 AM PCSO Support <pcso@govqa.us> wrote:

--- Please respond above this line ---

**PINELLAS COUNTY SHERIFF'S OFFICE**

09/23/2024
RE: PUBLIC RECORDS REQUEST of August 15, 2024, Reference # P132694-081524.

Dear Monica Lewis,

The Pinellas County Sheriff's Office received a public records request from you on August 15, 2024. Your request mentioned:

"This was originally requested on 7/17/24 // I did not receive the videos requested// One video did not download at all and the other was still redacted concerning sound//

A FOIA request. I am requesting the camera view to show inside the
vehicle Kyle Edward King was driving on 5/13/22. I want the camera view that shows him operating the vehicle when he crashed.
I would like the unredacted dash cam video with all sound."

In response to your request, the Pinellas County Sheriff's Office completed a search of our records and there are potential items responsive to your public records request. Your request has taken in excess of fifteen minutes, as such, the cost for these records is as follows:

Fees Charged:

CD/DVD: $3.00
(0.00 hours @$36.95/hour)

Total: $3.00

**Please clarify what video(s) you are requesting on a CD.**

Payments must be made within 60 days or your request will be considered withdrawn. The following are acceptable forms of payment; cash – exact amount (change cannot be provided), money order or a check made out to the Pinellas County Sheriff's Office. Please send a check made out to the Pinellas County Sheriff's Office, with "PRR No. P132694-081524" written in the memo section and mail to:

Pinellas County Sheriff's Office PRPU

P. O. Drawer 2500

Largo, FL 33779-2500

Your public records request will be processed upon receipt of your payment. Should the processing of the request exceed the estimated time, you will be invoiced for the difference. In the event the request takes less time than originally estimated, we will refund the difference.

Sincerely,

Shawn Wilson

Manager Public Records Processing Unit

Public Records Processing Unit

---

To monitor the progress or update this request please log into the Public Records Center

Powered by GovQA

Exhibit F: Notice of Settlement Offer / Written Settlement Documentation

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION
CASE NO. 23-003005-CI-19

MONICA LEWIS,

Plaintiff,

vs.

BOB GUALTIERI in his official capacity
as SHERIFF OF PINELLAS COUNTY,

Defendant.
_______________________________________/

**NOTICE OF SERVICE OF PROPOSAL FOR SETTLEMENT/OFFER OF JUDGMENT**

The Defendant, BOB GUALTIERI in his official capacity as SHERIFF OF PINELLAS COUNTY, by and through undersigned counsel, hereby gives notice that on the 18th day of May, 2024 a Proposal for Settlement/Offer of Judgment was served on the Plaintiff, MONICA LEWIS.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY a copy of the foregoing has been furnished to DYLAN BEITEL, ESQUIRE by Electronic Mail at Dbpleadings@forthepeople.com; abrown@forthepeople.com this 18th day of May, 2024.

**ABBEY, ADAMS, BYELICK, & MUELLER, L.L.P.**

*/s/ Jeffrey M. Adams*
JEFFREY M. ADAMS, ESQUIRE
805 Executive Center Drive West – Suite 110
St. Petersburg, Florida 33702-2407
(727) 821-2080
SPN #374540/FBN#0457442
ServiceJAdams@AbbeyAdams.com
Attorney for Defendant

Exhibit G: Court Pleading: Motion to Strike

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR THE COUNTY OF PINELLAS, STATE OF FLORIDA
CIVIL DIVISION

MONICA LEWIS,
Plaintiff,

v. Case No. 23-003005-CI-19

BOB GUALTIERI in his official capacity
as SHERIFF OF PINELLAS COUNTY,
Defendant
_______________________________________/

**DEFENDANT'S, BOB GUALTIERI IN HIS OFFICIAL CAPACITY AS SHERIFF OF PINELLAS COUNTY, MOTION FOR COURT ORDER STRIKING FILINGS AND CLOSING CASE**

BOB GUALTIERI in his official capacity as SHERIFF OF PINELLAS COUNTY ("the Sheriff") hereby moves this Court, pursuant to 28 U.S.C. § 1446(d), to strike all filings in this case after the Notice of Removal to Federal Court was filed on August 19, 2024 (Doc. 66), and close this case, as this Court has been divested of jurisdiction by the removal of this case. In support, the Sheriff states:

1. This case arises from a car collision between Plaintiff, Monica Lewis, and Pinellas County Deputy Sheriff Kyle King on May 13, 2022.
2. Although Plaintiff's prior counsel brought the Complaint and Amended Complaint raising negligence claims only, once he withdrew from this case, Plaintiff, pro se, filed the Second Amended Complaint against Sheriff Gualtieri and Deputy King on August 11, 2024 individually and officially, based on a completely new theory that Deputy King intentionally rammed her vehicle to purposefully injure her and asserted claims for deprivation of rights

and equal protection under 42 U.S.C. § 1983, and assault and battery.

3. On August 16, 2024, the Sheriff removed this action to the U.S. District Court, Tampa Division, Case # 8:22-cv-01720.
4. On August 19, 2024, the Sheriff filed in this Court a Notice of Removal of the case. (Doc. 66).
5. On September 30, 2024, the U.S. District Court dismissed with prejudice the specious constitutional claims Plaintiff raised in her Second Amended Complaint, declined to exercise supplemental jurisdiction of Plaintiff's state law claim, and closed the case. (Exhibit 1). The District Court's Order did not issue an order of remand of this case to this Court.
6. On October 11, 2024, Plaintiff filed a filing entitled "Plaintiff's Motion to Reopen Case No: 23-003005-Ci-19 Citing Concurrent Jurisdiction," (Doc. 67) which claimed that this Court has "concurrent jurisdiction" with the Federal Court and requesting this Court to reopen the case so she can proceed on her state law claims.
7. This Court reopened the case on October 23, 2024.
8. On October 24, 2024, Plaintiff filed a filing entitled "Motion for Subpoena Duces Tecum for Production of Evidence from Non-Party," (Doc. 68) which seeks a subpoena against the Sheriff's Public Records Processing Unit.

**MEMORANDUM OF LAW**

Under 28 U.S.C. § 1446(d), removal of a case from state to federal court

"divest[s] the state circuit court of jurisdiction." *Gunning v. Brophy*, 746 So. 2d 468, 468 (Fla. 2d DCA 1997) (citing *General Electric Credit Corp. v. Smith,* 484 So.2d 75 (Fla. 2d DCA 1986)). This Court's "jurisdiction ended once copy of notice of removal was filed in state court and such filing operated retroactively to effect removal as of date of filing of removal petition in federal court." *Preston v. Allstate Ins. Co.*, 627 So. 2d 1322 (Fla. 3d DCA 1993) (citing 28 U.S.C.A. § 1446(d)). Thus, on August 19, 2024, jurisdiction in this Court ended. *Id.* This Court "is allowed to resume jurisdiction of the removed case if, and only if, the federal court grants permission by entering an order of remand," *City of Delray Beach v. Dharma Properties, Inc.*, 809 So. 2d 35, 36 (Fla. 4th DCA 2002), *cause dismissed,* 828 So. 2d 385 (Fla. 2002), which has not happened. Thus, the case should not have been reopened on October 23, 2024. Any filings entered on the docket after the Notice of Removal, which currently are Doc. 67-68, must be stricken from the docket and the case must be closed.

In addition, as to Plaintiff's Motion for Subpoena Duces Tecum (Doc. 68), the Pinellas County Sheriff's Office departments are under the Sheriff, who is a party in this case. As Fla. R. Civ. P. 1.351(a) indicates "[t]his rule provides the exclusive procedure for obtaining documents or things by subpoena from nonparties," and thus, Plaintiff's Motion for Subpoena Duces Tecum, even if it could have been filed in this case, would be due to be denied.

**CONCLUSION**

Based on the foregoing, the Sheriff respectfully moves this Court, pursuant to

28 U.S.C. § 1446(d), to strike all filings in this case after the Notice of Removal to Federal Court was filed on August 19, 2024 (Doc. 66), and close this case, as this Court has no jurisdiction to hear this case.

RESPECTFULLY SUBMITTED on October 30, 2024.

PINELLAS COUNTY SHERIFF
GENERAL COUNSEL'S OFFICE

*<u>/s/ Anne F. McDonough</u>*
Anne F. McDonough
Senior Associate Counsel
Florida Bar No. 084471
Pinellas County Sheriff's Office
10750 Ulmerton Road
Largo, FL 33778
Tel: (727) 582-6274
Fax: (727) 582-6459
amcdonough@pcsonet.com
Attorney for BOB GUALTIERI, in his Official Capacity as Sheriff of Pinellas County

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 30, 2024, I electronically filed the foregoing with the Clerk of the Court through the Florida E-filing Portal, which will serve the foregoing upon Plaintiff, pro se.

*<u>/s/ Anne F. McDonough</u>*
Anne F. McDonough

Exhibit H: Court Pleading: Motion to Strike All Briefs, Strike the Supplement of the Incomplete Transfer of the Court File, and Strike All Appendices

[redacted]

Exhibit H

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**Case #: 24-13559-G
M.D. Fla. Case #: 8:24-cv-01935**

---

MONICA LEWIS,
Appellant

**v.**

BOB GUALTIERI,
In His Official and Individual Capacity
Appellee

---

**APPELLEE, BOB GUALTIERI, IN HIS OFFICIAL CAPACITY'S, MOTION TO STRIKE APPELLANT'S SUPPLEMENTAL APPENDIX VOLUMES II and III (DOCs. 27, 29)**

---

PINELLAS COUNTY SHERIFF
GENERAL COUNSEL'S OFFICE

*/s/ Anne F. McDonough*
Anne F. McDonough
Senior Associate Counsel
Florida Bar No. 0084471
10750 Ulmerton Road
Largo, FL 33778
T: (727) 582-6274
F: (727) 582-6459
amcdonough@pcsonet.com
Attorney for Appellee, BOB GUALTIERI,
In His Official Capacity

IN THE UNITED STATES COURT OF APPEALS FOR
THE ELEVENTH CIRCUIT

MONICA LEWIS,
Appellant

v.

Case #: 24-13559-G
M.D. Fla. Case #: 8:24-cv-01935

BOB GUALTIERI, In His Official and
Individual Capacity, Appellee
__________________________________/

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Appellee, BOB GUALTIERI, in His Official Capacity as Sheriff of Pinellas County, Florida, pursuant to 11th Cir. R. 26.1, hereby files and serves his Certificate of Interested Persons and Corporate Disclosure Statement:

**Barber, Hon. Thomas P.,** U.S. District Judge, Middle District of Florida;

**Beitel, Dylan,** Morgan & Morgan Tampa, Former Counsel for Appellant;

**Gualtieri, Bob** in his Official Capacity as Sheriff of Pinellas County, Florida, Appellee;

**King, Kyle Edward,** Pinellas County Deputy Sheriff, Defendant;

**Lewis, Monica,** Appellant

**McDonough, Anne F.,** Senior Associate Counsel, Pinellas County Sheriff's Office, Counsel for Appellee;

**Morgan & Morgan Tampa,** Former Counsel for Appellant;

**Tuite, Hon. Christopher P.** U.S. Magistrate Judge, Middle District of Florida

IN THE UNITED STATES COURT OF APPEALS FOR
THE ELEVENTH CIRCUIT

MONICA LEWIS,
Appellant

v.

Case #: 24-13559-G
M.D. Fla. Case #: 8:24-cv-01935

BOB GUALTIERI, In His Official and
Individual Capacity, Appellee
_________________________________/

**APPELLEE'S MOTION TO STRIKE "APPELLANT'S SUPPLEMENTAL APPENDIX VOLUMES II AND III" (DOC. 27, 29)**

Appellee, BOB GUALTIERI, in his Official Capacity as Sheriff of Pinellas County, hereby moves this Court, pursuant to Fed. R. Civ. P. 27(a) and 11th Cir. R. 27-1(a), to strike Appellant's Supplemental Appendix Volumes II and III (Docs. 27, 29), and states:

1. As evidenced by Appellant's "Motion to Supplement/ Correct the Record on Appeal" (Doc. 10-2), "Transcript and Statement of Evidence" (Doc. 10-3), Appellee's Motion to Strike Initial Brief (Doc. 12) and Appendix (Doc. 13), Appellant has repeatedly tried to introduce arguments and documents into the records of the District Court and this Court that were not before the District Court when it issued the Order that Appellant has appealed. (Ex. 5).
2. As a result, Appellee filed a Response in Opposition to Appellant's Motion to Supplement and attached Transcript (Doc. 11) and a Motion to Strike Initial Brief (Doc. 12) and Appendix (Doc. 13) or, Alternatively, Portions

Thereof (Doc. 14).

3. On January 2, 2025, this Court ruled "Appellant's motion to supplement the record [Doc. 10] and Appellee's motion to strike the initial brief and appendix [Doc. 14] are CARRIED WITH THE CASE." (Doc. 17).

4. On March 2 and March 4, 2025, Appellant improperly supplemented her appendix by filing medical records, in a blatant attempt to sway the Court with medical information that is not part of this appeal, and then on March 5 and 6, 2025, Appellant again improperly supplemented her appendix by filing documents that are entirely irrelevant to this appeal and were not part of the record before the District Court. (Docs. 22, 25, 27 and 29).

**MEMORANDUM OF LAW**

In the interests of judicial economy, Appellee hereby incorporates by reference facts and arguments raised in Docs. 11 and 14 as if fully set forth herein.

Pursuant to Fed. R. App. P. 10(a), the contents of the record are only: the original papers and exhibits *filed in the district court,* transcript of proceedings, if any; and certified copy of docket entries prepared by the district clerk. *United States v. Poignant*, 767 F. App'x. 735, 741 (11th Cir. 2019) (quoting Fed. R. App. P. 10(a)) (emphasis added); *see also United States v. Johnson*, 732 F. App'x. 638, 665 (10th Cir. 2018) (only certain items constitute the record on appeal). Eleventh Circuit Rule 30–1 requires appellants to file "copies of the following portions, and

only the following portions, of the district court … record." 11th Cir. R. 30–1. "[T]he contents of the record are firmly fixed, and not subject to interpretation." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 978 (11th Cir. 2005).

New evidence cannot be brought into an appeal by attaching it to an appendix. *See United States v. Matute-Rankin*, 702 F. App'x. 969, 970 (11th Cir. 2017) ("we do not consider exhibits attached to a brief that were not presented to the district court") (quoting *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)); *United States v. Brown*, 598 F. App'x. 689, 693 (11th Cir. 2015) (affidavit not filed in district court was not part of the record on appeal and could not be considered); *Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320 (11th Cir. 2006) (appellate court considers only evidence that was part of the record before the district court); *see also Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391, at *3 (11th Cir. Feb. 7, 2023) (appellate court will not consider new evidence on appeal); *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008) appellate court does not consider facts outside the record); *In re Inspection of Norfolk Dredging Co.*, 783 F.2d 1526, 1532 n.7 (11th Cir. 1986) (striking documents not presented to district court); *Cunningham v. Whitener*, 182 F. App'x 966, 971 n.5 (11th Cir. 2006) (striking irrelevant exhibits in brief).

Appellant's piecemeal supplementation on a daily basis of her Appendix (Doc. 13), which already contains extensive documents that are irrelevant and were

not part of the record, with additional documents that are irrelevant and were not before the District Court, requires Appellee to expend resources to repeatedly move to strike the improperly filed documents. This piecemeal amending of her Appendix with improperly filed documentation must be rejected.

## CONCLUSION

Based on the foregoing, Appellee respectfully moves this Court to strike Appellant's Supplemental Appendix Volumes II and III (Doc. 27, 29).

RESPECTFULLY SUBMITTED on March 7, 2025.

PINELLAS COUNTY SHERIFF
GENERAL COUNSEL'S OFFICE

*<u>/s/ Anne F. McDonough</u>*
Anne F. McDonough
Senior Associate Counsel
Florida Bar No. 0084471
10750 Ulmerton Road
Largo, FL 33778
T: (727) 582-6274
F: (727) 582-6459
amcdonough@pcsonet.com
Attorney for Appellee

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), as it is set in Times New Roman typeface using 14-point font and contains 1,136 words.

*<u>/s/ Anne F. McDonough</u>*
Anne F. McDonough

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve the foregoing upon Appellant, pro se.

*/s/ Anne F. McDonough*
Anne F. McDonough

Exhibit I: Email Correspondence: Denial of Release of Public Records

Exhibit I

Gmail NEWDAY123100 <horizonnear@gmail.com>

**Lewis v. Gualtieri, et al; United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:26-cv-1776**

10 messages

**McDonough,Anne** <amcdonough@pcsonet.com> Thu, Jun 18, 2026 at 11:19 AM
To: NEWDAY123100 <horizonnear@gmail.com>

Ms. Lewis,

As you have once again raised constitutional claims, this matter has been removed to the United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:26-cv-1776.

Since you are pro se in the above-cited case, the default service of filings and correspondence is via U.S. Mail. Pursuant to Fed. R. Civ. P. 5(b)(2)(E), please advise if you consent to exchanging service of all filings and discovery (if any) in this case via e-mail, or if you would prefer to serve and receive them through U.S. Mail?

Thank you,

**Anne F. McDonough**

Senior Associate Counsel

Pinellas County Sheriff's Office

(727) 582-6274

---

**NEWDAY123100** <horizonnear@gmail.com> Thu, Jun 18, 2026 at 12:55 PM
To: "McDonough,Anne" <amcdonough@pcsonet.com>

Hi Ms McDonough,

Will you be releasing the discovery that I have been requesting? If so, when can I expect it? Please let me know.

Monica Lewis

[Quoted text hidden]

**image001.png**
11K

---

**NEWDAY123100** <horizonnear@gmail.com> Thu, Jun 18, 2026 at 12:59 PM
To: justiceisnecessary@gmail.com

[Quoted text hidden]

---

**2 attachments**

**image001.png**
11K

**image001.png**
11K

---

**McDonough,Anne** <amcdonough@pcsonet.com> Thu, Jun 18, 2026 at 12:59 PM
To: NEWDAY123100 <horizonnear@gmail.com>

Ms. Lewis,

No, as I plan to move to dismiss again, which you should certainly be expecting.

Please advise, pursuant to Fed. R. Civ. P. 5(b)(2)(E), if you consent to exchanging service of all filings and discovery (if any) in this case via e-mail, or if you would prefer to serve and receive them through U.S. Mail? I am happy to do either, but I do need to receive confirmation of how you wish to send and receive documents.

Thank you,

**Anne F. McDonough**

Senior Associate Counsel

Pinellas County Sheriff's Office

(727) 582-6274

[Quoted text hidden]

---

**NEWDAY123100** <horizonnear@gmail.com> Thu, Jun 18, 2026 at 1:02 PM
To: "McDonough,Anne" <amcdonough@pcsonet.com>

Do you agree to receive documents by email?

[Quoted text hidden]

**2 attachments**

**image001.png**
11K

**image001.png**
11K

---

**NEWDAY123100** <horizonnear@gmail.com> Thu, Jun 18, 2026 at 1:03 PM
To: justiceisnecessary@gmail.com

---------- Forwarded message ---------
From: **NEWDAY123100** <horizonnear@gmail.com>
[Quoted text hidden]
[Quoted text hidden]

**3 attachments**

**image001.png**
11K

**image001.png**
11K

**image001.png**
11K

---

**McDonough,Anne** <amcdonough@pcsonet.com> Thu, Jun 18, 2026 at 1:03 PM
To: NEWDAY123100 <horizonnear@gmail.com>

Only if you do. Otherwise we can both continue to mail.

Thank you,

**Anne F. McDonough**

Senior Associate Counsel

Pinellas County Sheriff's Office

(727) 582-6274

**From:** NEWDAY123100 <horizonnear@gmail.com>
**Sent:** Thursday, June 18, 2026 1:02 PM
**To:** McDonough,Anne <amcdonough@pcsonet.com>
**Subject:** Re: Lewis v. Gualtieri, et al; United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:26-cv-1776

[Quoted text hidden]

---

**NEWDAY123100** <horizonnear@gmail.com> Thu, Jun 18, 2026 at 1:05 PM
To: "McDonough,Anne" <amcdonough@pcsonet.com>

That sounds reasonable to me. We can both agree to email.
[Quoted text hidden]

**3 attachments**

**image001.png**
11K

**image001.png**
11K

**image001.png**
11K

---

**McDonough,Anne** <amcdonough@pcsonet.com> Thu, Jun 18, 2026 at 1:06 PM
To: NEWDAY123100 <horizonnear@gmail.com>

OK, that's fine

Thank you,

**Anne F. McDonough**

Senior Associate Counsel

Pinellas County Sheriff's Office

(727) 582-6274

**From:** NEWDAY123100 <horizonnear@gmail.com>
**Sent:** Thursday, June 18, 2026 1:05 PM
**To:** McDonough,Anne <amcdonough@pcsonet.com>
**Subject:** Re: Lewis v. Gualtieri, et al; United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:26-cv-1776

Exhibit J: Email Correspondence: Threat of Sanctions or Demand to Dismiss Lawsuit

Sheriff Bob Gualtieri

Pinellas County Sheriff's Office

"Leading The Way For A Safer Pinellas"

June 24, 2026

Monica Lewis, Pro se
(Via email horizonnear@gmail.com pursuant to Fed. R. Civ. P. 5(b)(2)(e))

*Re:* *Monica Lewis v. Bob Gualtieri et al*
*U.S. District Court, Tampa Division, Case # 8:26-cv--01776-MSS-LSG*

Dear Ms. Lewis:

As you know, I represent Defendant Bob Gualtieri, in His Official Capacity as Sheriff of Pinellas County, Florida, in the above-referenced case.

Enclosed, pursuant to Fed. R. Civ. P. 11(c)(2) and §57.105(4), Fla. Stat., please find a Motion for Sanctions, which will be filed with the Court if you do not, within 21 days of service, voluntarily dismiss the Amended Complaint, which is barred by res judicata and the statute of limitations, and which is based on legally and factually unsupported claims.

As they will be attached as exhibits to the filed Motion for Sanctions, this letter has been stamped Exhibit A, the enclosed Motion has been stamped Exhibit B and the exhibits to the Motion are marked Exhibits B-1 – B-5. The proof of service for this mailing, which will be the email to you today with this letter and the attached documents, will be stamped Exhibit B-6.

Sincerely,

Anne F. McDonough
Enclosures

EXHIBIT
A